Filed 4/14/14  In re S.K. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SIX

| | |
|---|---|
| In re S.K., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B252206 (Super. Ct. No. J068675) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>N.K.,<br><br>    Defendant and Appellant. | |

N.K. appeals a judgment of the juvenile court terminating her parental rights to S.K., her daughter.  (Welf. & Inst. Code, § 366.26.)  The Ventura County Human Services Agency (HSA) initially placed the child "into protective custody" because of N.K.'s drug abuse problem.  We conclude the juvenile court could terminate parental rights without first obtaining an adoptive home study report.  Substantial evidence supports the juvenile court's finding that the child was likely to be adopted within a reasonable time.  We affirm.

FACTS

S.K was born in October 2011. HSA placed the child "into protective custody" on February 7, 2012, because N.K. "tested positive for methamphetamine." N.K. brought methamphetamine into a "transition home" and used the drug in the child's "presence."

On February 9, 2012. the juvenile court found the child "should remain in foster care" because there was "no reasonable means of protecting her physical and emotional health other than continued detention."

HSA offered N.K. family reunification services "under the supervision of the Dependency Drug Court." On March 29, 2012, the child was placed with N.K. at the "Prototypes" program. On April 23, 2012, N.K. "left Prototypes," and the child was placed back into foster care.

On August 20, 2012, the juvenile court terminated family reunification services for N.K. It scheduled a December 10, 2012, hearing "to establish a permanent plan of adoption." The court continued that hearing to May 28, 2013, to provide HSA the opportunity to evaluate the "stability of [the child's] placement with her maternal aunt" and "the appropriateness of adoption."

On April 29, 2013, HSA removed the child from the aunt's home and placed her with "prospective adoptive parents." HSA determined the aunt's home was not a safe place for the child.

In July 2013, HSA recommended that N.K.'s parental rights be terminated and that the child be placed for adoption with the prospective adoptive parents. In a "366.26 WIC Report," the HSA social worker said the child was "an adorable 20-month-old child" who was "doing well and adjusting to her routine and environment." She said the child has "no known development issues or concerns," attends daycare, "plays with the other children, and has no tantrums while at the daycare."

The HSA social worker noted that the child "was prone to having temper tantrums and crying inconsolably" when she was initially placed with the prospective

2

adoptive parents. But under their care, her tantrums "ceased." The child follows their routine "and tries to help with taking out the trash, feeding the dog, and folding laundry." The HSA worker said the prospective adoptive parents "are hoping to finalize [the child's] adoption, should she be freed from parental custody and control." They have provided the child with "a safe, loving and stable home." They are "loving, caring and responsible people who are motivated to provide all they can for [the child]." They are able to continue to "meet [the child's] needs."

The juvenile court terminated N.K.'s parental rights and found "adoption is and continues to be the appropriate permanent plan for the child." It said, "By clear and convincing evidence, it is likely that the child will be adopted."

DISCUSSION

*The Absence of an Adoptive Home Study*

When the juvenile court terminated N.K.'s parental rights and found the child was adoptable, it did not have a formal adoptive home study.

"'In order for the court to select and implement adoption as the permanent plan, it must find, by clear and convincing evidence, the minor will likely be adopted if parental rights are terminated.'" (*In re Brandon T.* (2008) 164 Cal.App.4th 1400, 1408.) "We review an order terminating parental rights for substantial evidence." (*Ibid.*) We must draw all reasonable inferences in support of the court's findings. (*In re Josue G.* (2003) 106 Cal.App.4th 725, 732.) We do not weigh the evidence or decide credibility issues.

N.K. contends the juvenile court erred by terminating her parental rights before the completion of an adoptive home study of the potential adoptive parents. We disagree.

"[T]here is no requirement that an adoptive home study be completed before a court can terminate parental rights." (*In re Marina S.* (2005) 132 Cal.App.4th 158, 166.) "The question before the juvenile court [is] whether the child [is] likely to be adopted within a reasonable time, not whether any particular adoptive parents [are]

3

suitable."  (*Ibid.*)  But even without a formal adoptive home study, there was evidence that the prospective adoptive parents were suitable.  In the July 2013 HSA report, the worker said the prospective adoptive parents are "loving, caring and responsible people" who were providing the child with a "safe, loving and stable home."

N.K. contends there was insufficient evidence to support a finding of adoptability.  We disagree.

"The issue of adoptability . . . focuses on the *minor*, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor."  (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649.)  Here there was sufficient evidence to support a finding of adoptability.  The HSA worker said the child was "adorable" and was "doing well and adjusting to her routine and environment" with the prospective adoptive parents.  The child was attending daycare and had "no known developmental issues."

N.K. notes there is evidence that the child "was prone to having tantrums and crying" and that the child had six "prior placement episodes."  But the issue is not whether some evidence may support the appellant, it is whether substantial evidence supports the judgment.  Moreover, the HSA's July report shows that under the prospective adoptive parents' care, the tantrums "ceased," the child had no tantrums at daycare, and her crying was "age appropriate."  The child had six prior placements, but the social worker said this was not the fault of the child.  It largely involved misconduct, irresponsibility or unsuitability of the adults the child had been placed with.  The child had previously been "removed from the care of her relative care providers" because the child had "sustained injuries on three separate occasions."  HSA had to make placements because of  N.K.'s drug abuse and because N.K. left Prototypes.  An aunt's home was not a suitable environment for the child.

But even so, "a minor who ordinarily might be considered unadoptable due to age, poor physical health, physical disability, or emotional instability is nonetheless likely to be adopted because a prospective adoptive family has been identified as willing

4

to adopt the child.'"  (*In re Brandon T.*, *supra*, 164 Cal.App.4th at p. 1408.)  Here the prospective adoptive parents wanted to adopt the child.  The evidence was sufficient to support the juvenile court's findings and N.K. has not shown error.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:


YEGAN, J.


PERREN, J.


5

Ellen Gay Conroy, Judge

Superior Court County of Ventura

_____

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant.

Leroy Smith, County Counsel, Cynthia Krause, Assistant County Counsel, for Plaintiff and Respondent.